EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Partido Popular Democrático Comité Municipal de Orocovis John Avilés Burgos – Comisionado Electoral Partido Popular Democrático Orocovis<br><br>Peticionarios<br><br>vs.<br><br>Comisión Local de Elecciones Precinto 66 de Orocovis, et al.<br><br>Recurridos | Apelación<br><br>2008 TSPR 166<br><br>175 DPR _____ |

Número del Caso: AC-2008-65

Fecha: 10 de octubre de 2008

Tribunal de Apelaciones:

      Región Judicial de Aibonito-Panel VII

Juez Ponente:

      Hon. Rafael L. Martínez Torres

Abogados de la Parte Peticionaria:

      Lcdo. Rene Arrillaga Armendáriz
      Lcdo. Ricardo Arrillaga Armendáriz

Abogado de la Parte Recurrida:

      Lcdo. Oscar J. Santamaría Torres

Materia: Recusación por Domicilio.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Partido Popular Democrático
Comité Municipal de Orocovis
John Avilés Burgos-
Comisionado Electoral
Partido Popular Democrático
Orocovis

    Peticionarios                    AC-2008-065

        vs.

Comisión Local de Elecciones
Precinto 66 de Orocovis, et al.

    Recurridos


SENTENCIA


San Juan, Puerto Rico, a 10 de octubre de 2008.

Mediante el presente recurso se nos solicita que revoquemos una Sentencia emitida por el Tribunal de Apelaciones, en la cual se invalidó el proceso de recusación de ochenta y cuatro electores por razón de domicilio, debido a la publicación con tan sólo un día de retraso de los edictos relativos a dicho proceso. Según se desprende del apéndice a la petición, esa dilación fue el resultado de la falta de espacio y disponibilidad del Periódico *El Vocero*, ante el gran volumen de edictos sobre recusaciones que se recibió durante el período en controversia.

Por entender que el foro apelativo erró al revocar la determinación del Tribunal de Primera Instancia, Sala Superior de Aibonito, el cual encontró justa causa para esa tardanza luego de la celebración de una vista evidenciaria, revocamos el dictamen recurrido.

I.

El Partido Popular Democrático (en adelante, el PPD) inició un proceso de recusación de ochenta y cuatro electores del Precinto 066 del Municipio de Orocovis, por razón de domicilio, de conformidad con lo dispuesto en la Ley Electoral de Puerto Rico, Ley Núm. 4 del 20 de diciembre de 1977, 16 L.P.R.A. sec. 3001 *et seq.* Como parte de dicho proceso, el PPD procedió a notificarle personalmente a los electores sobre las distintas solicitudes de recusación, con el fin de que éstos comparecieran a una vista ante la Comisión Local de Elecciones de Orocovis. Sin embargo, como esas gestiones no tuvieron éxito, el PPD le solicitó al Presidente de la Comisión Local su autorización para realizar la notificación mediante la publicación de edictos, según lo permite la Sección 2.12 del Reglamento para el Trámite de Recusaciones de la Ley Electoral del 13 de noviembre de 2007.

Examinada dicha petición, el 20 de mayo de 2008 el Presidente de la Comisión Local autorizó la notificación mediante edictos, para lo cual el PPD contaría con un término de diez días reglamentarios. Luego de realizar los trámites administrativos dirigidos a pagar los costos de su

publicación, el PPD envió los edictos al Periódico *El Vocero* el 28 de mayo de 2008 con el fin de colocarlos en la edición del 30 de mayo de 2008, fecha límite para realizar la notificación. No obstante, a pesar de presentar su solicitud dentro del término reglamentario correspondiente, *El Vocero* le notificó al PPD el 2 de junio de 2008 que la publicación de los edictos no pudo realizarse en la fecha señalada, debido a la gran cantidad de recusaciones sometidas para publicación. En cambio, la misma se realizó el 31 de mayo.

Así las cosas, en la fecha pautada para la celebración de la vista de recusación, el Presidente de la Comisión Local determinó que la notificación mediante edictos fue ineficaz, pues se había realizado con un día de retraso. Por tal motivo, la vista de recusación no pudo llevarse a cabo, aun cuando varios de los electores recusados comparecieron a ella. De esa determinación el PPD recurrió ante el Tribunal de Primera Instancia, Sala Superior de Aibonito. Dicho foro, tras celebrar una vista evidenciaria, resolvió que hubo justa causa para la referida tardanza de un día, pues ésta fue el resultado del gran volumen de recusaciones recibido por el Periódico *El Vocero*.

Inconforme, el Comisionado Electoral del Partido Nuevo Progresista para el Precinto 066 de Orocovis (en adelante, PNP) recurrió ante el Tribunal de Apelaciones, el cual revocó la determinación del foro de instancia por entender que en este caso el PPD no había demostrado justificación alguna para la dilación antes reseñada. Además, el tribunal

concluyó que en vista de que la notificación mediante edictos era nula, el único remedio que tenía el PPD era instar un nuevo proceso de recusación.

Insatisfecho con el referido dictamen, el PPD comparece ante nos. En síntesis, señala que notificó de lo ocurrido a la Comisión Local dentro del término de cinco días dispuesto por el Reglamento para el Trámite de Recusaciones, *supra*. Además, expresa que la referida tardanza de un día no era atribuible a una falta de diligencia de su parte, pues se cumplió con presentar los edictos para publicación antes del término de diez días correspondiente. Por ello, aduce que la tardanza en este caso estuvo justificada.

Acogido el recurso como una petición de *certiorari*, y examinada la oposición presentada por la parte recurrida, procedemos a resolver el mismo según lo dispuesto en la Regla 21 de nuestro Reglamento, 4 L.P.R.A. Ap. XXI-A.

II.

Como se sabe, la Constitución del Estado Libre Asociado de Puerto Rico consagra el derecho de todos los ciudadanos al sufragio universal, en todos los procesos electorales, como uno de los valores constitucionales de la más alta jerarquía en nuestro país. En ese sentido, nuestra Carta Magna establece que el ejercicio del derecho al voto será igual, directo, secreto y libre de toda coacción. Const. ELA, Art. II, sec. 2. Con el fin de garantizar adecuadamente ese derecho, la Asamblea Legislativa aprobó la Ley Electoral, la cual establece que no se podrá anular la

inscripción legal de un ciudadano como elector a no ser por virtud de sus disposiciones o de una orden judicial. Véase Art. 2.006 de la Ley Electoral, *supra*, 16 L.P.R.A. sec. 3056.

Por otra parte, la Declaración de Propósitos de la Ley Electoral —la cual contiene los presupuestos básicos para el funcionamiento de nuestro sistema democrático— establece la necesidad de que los procesos electorales descansen en unas garantías de pureza electoral que permitan contar cada voto en la forma y manera en que fue emitido, además de asegurar que las elecciones en Puerto Rico se conduzcan de manera ordenada y pacífica. Véase 16 L.P.R.A. sec. 3002. En aras de lograr estos objetivos, el Art. 2.023 de la Ley Electoral establece el mecanismo de recusación para eliminar a un elector del registro oficial y para evitar que aquellos que no tienen derecho a ser electores formen parte del mismo. 16 L.P.R.A. sec. 3073. Así, pues, se establece un período de cuatro meses para recusar a los electores que no tengan derecho a votar en el precinto correspondiente. Dicho período comienza el 15 de enero y termina el 15 de mayo de cada año electoral.

El partido que interese recusar a un elector en particular debe notificarle personalmente con copia de la solicitud de recusación y acreditar, bajo juramento y apercibimiento de perjurio, haber realizado dicha gestión. Véase Sec. 2.8 del Reglamento para el Trámite de Recusaciones, *supra*; PPD v. Barreto Pérez, 111 D.P.R. 199,

201 (1981). Por su parte, el Art. 2.12 del citado Reglamento permite que se publique un edicto con el fin de notificarles a aquellas personas que, a pesar de haberse realizado diligencias razonables a esos efectos, no pudieron ser emplazadas personalmente.

Sobre el particular, la Sec. 2.12 antes citada dispone que una vez se acrediten las diligencias realizadas para notificarle al elector sobre el proceso de recusación instado en su contra, el Presidente de la Comisión Local podrá autorizar la notificación mediante edictos. El edicto se publicará dentro del término de diez días a partir de la fecha en que se reciba dicha autorización. A su vez, deberá enviarse la citación a la vista correspondiente mediante correo certificado, en el referido término, a la última dirección del elector que surja del Registro General de Electores.

Asimismo, la persona que diligencie la publicación del edicto tendrá cinco días para acreditar, ante la Junta de Inscripción Permanente que corresponda, el cumplimiento cabal de la normativa anterior. Transcurrido ese período sin realizarse dicha acreditación, se entenderá desistida la solicitud de recusación. Por el contrario, si se acredita el cumplimiento con el trámite reseñado, se celebrará la vista de recusación dentro de los diez días siguientes a la publicación del edicto. Los términos dispuestos en la referida sección del Reglamento para el Trámite de Recusaciones son de cumplimiento estricto. Véase PPD v.

Barreto Pérez, *supra*, pág. 200. A esos efectos, la Sec. 6.7 de dicho reglamento establece que los términos establecidos en el mismo podrán ser variados por acuerdo unánime de los comisionados electorales o por justa causa en los casos meritorios.

Ahora bien, al considerar la existencia de justa causa en el contexto de las recusaciones de electores no puede perderse de vista que se trata de un procedimiento que busca limitar, aun cuando por unas justificaciones particulares, el derecho de un elector a votar en una elección. Por ese motivo, se debe constatar fehacientemente que las razones aducidas para haber incumplido con los términos de cumplimiento estricto en los procesos de recusaciones no sean meros argumentos sin sustancia que soslayen la importancia del derecho al voto en esta jurisdicción.

                                III.

En el caso de autos, el PPD solicitó la recusación de más de ochenta electores del Precinto 066 de Orocovis por entender que ya no residían en dicho municipio. Ante el hecho de que las gestiones para notificarles personalmente sobre el referido proceso no fueron exitosas, se solicitó la publicación de edictos. Sin embargo, aunque el PPD sometió su solicitud de publicación al Periódico *El Vocero* en el término correspondiente, dicho rotativo no pudo colocar los edictos en la edición del 30 de mayo de 2008, última fecha para realizar la misma. Los edictos se publicaron finalmente al día siguiente; es decir, el 31 de mayo de 2008.

Tras considerar detenidamente la presente controversia, somos del criterio que el PPD presentó justa causa para la tardanza de un día en la publicación de los edictos en cuestión. En primer lugar, del expediente ante nos surge que no fue hasta el 2 de junio de 2008 que la Sra. Dolores Barreiro, Directora de Clasificados y Edictos del periódico, le notificó al PPD sobre la situación. Es preciso advertir que, a esa fecha, era prácticamente imposible solicitarle una prórroga al Presidente de la Comisión Local para publicar los edictos. Al momento en que el PPD se enteró del retraso, el cual no guardó relación alguna con una falta de diligencia suya, ya el término para realizar la referida publicación había transcurrido.

Por otra parte, a pesar de que el PPD presentó la solicitud de publicación el 28 de mayo de 2008, el Tribunal de Primera Instancia concluyó que dicha espera estaba justificada, pues la tramitación del pago por los edictos y la realización de otras gestiones dirigidas a publicar los mismos eran actividades administrativas necesarias para lograr cumplir con los requisitos que impone la Ley Electoral al respecto. En este sentido, coincidimos con el foro de instancia, el cual tuvo ante su consideración prueba testifical sobre el trámite administrativo de rigor y resolvió, finalmente, que la notificación mediante edictos fue eficaz.

En atención a lo anterior, nos resta precisar cuál sería el remedio más adecuado para disponer del presente

caso. En vista del tiempo transcurrido entre la notificación mediante edictos y la suspensión de la vista para atender las recusaciones en controversia, y en consideración de la importancia del derecho al voto en nuestra jurisdicción, se ordena la publicación de unos nuevos edictos dentro del término de tres días a partir de la notificación de la presente Sentencia. En dicha notificación se citará a una vista de recusación dentro del término de siete días a partir de la fecha de publicación de los edictos antes mencionados. A su vez, de conformidad con la Sec. 2.12 del Reglamento para el Trámite de Recusaciones, *supra*, el PPD deberá notificar por correo certificado la citación a la referida vista.

Por los fundamentos antes expuestos, se revoca la Sentencia emitida por el Tribunal de Apelaciones. En consecuencia, se devuelve el caso a la Comisión Local de Elecciones del Precinto 066 para que continué con los procedimientos de conformidad con la aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez disiente con opinión escrita.

Aida I. Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Partido Popular Democrático Comité Municipal de Orocovis John Avilés Burgos – Comisionado Electoral Partido Popular Democrático Orocovis<br><br>Recurridos<br><br>v.<br><br>Comisión Local de Elecciones Precinto 66 de Orocovis, *et als*<br><br>Peticionaria | AC-2008-65 |

Opinión disidente emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 10 de octubre de 2008

La controversia en este caso gira en torno al proceso de recusación por domicilio de unos electores inscritos en el Precinto 066 del Municipio de Orocovis instado por el Partido Popular Democrático. El Tribunal de Apelaciones, revocando al foro primario, desestimó las peticiones de recusación presentadas. Hoy, este Tribunal, a mi juicio erróneamente, revoca al foro apelativo intermedio. Con este curso de acción el Tribunal minusvalora el requisito de justa causa para la publicación del edicto de recusación que exige la Ley Electoral. No puedo estar conforme con este curso de acción.

Este Tribunal plantea la controversia existente como un problema de falta de espacio y disponibilidad del periódico El Vocero para dicha publicación, por lo que concluye hubo justa causa para la publicación tardía del edicto. En realidad, la controversia debe enfocarse desde

la perspectiva de las diligencias llevadas a cabo por el Partido Popular Democrático para cumplir con el término reglamentario de publicación del edicto. A poco que evaluemos las mismas, forzoso es concluir que las mismas no constituyen justa causa que justifique validar la publicación tardía del edicto en este caso. En virtud de lo cual, el único remedio disponible era la desestimación de las recusaciones presentadas, tal y como hizo el foro apelativo intermedio.

Lo hechos en este caso aparecen resumidos en la Sentencia que hoy se dicta por lo que nos parece innecesario relatarlos nuevamente.

**I**

Nuestra democracia representativa es la piedra angular de nuestra vida colectiva como pueblo. Así se recoge con claridad en el Preámbulo de la Constitución del Estado Libre Asociado de Puerto Rico, al enfatizarse allí el carácter democrático de nuestra sociedad donde el orden político emana del pueblo y se ejerce con arreglo a la voluntad manifiesta en las urnas. *McKlintock v. PNP*, res. 12 de junio de 2007, 171 D.P.R. _____, 2007 TSPR 121. El voto es por lo tanto el mecanismo que potencia nuestra vida en democracia.

La Constitución del Estado Libre Asociado ordena expresamente garantizar el sufragio universal, igual, directo y secreto y proteger este derecho contra toda coacción en su ejercicio. Constitución Estado Libre Asociado, Art. II, sec. 2. Véanse además, *PPD v. Admor.*

*Gen. de Elecciones*, 111 D.P.R. 199, 222 (1981); *PSP v. CEE*, 110 D.P.R. 400, 405 (1980). En *PPD v. Admor. Gen. de Elecciones, supra*, reconocimos que el derecho al voto es uno de los derechos fundamentales del ciudadano y como tal, "es nuestra obligación hacerlo observar y respetar." 111 D.P.R., pág. 221.

El sujeto principal de nuestro entramado constitucional-electoral es, sin duda, el elector individual por ser el titular de este derecho fundamental. Hemos advertido en el pasado que quien impugne el derecho a votar de un ciudadano carga sobre sí con el *onus* de demostrar, mediante prueba clara, robusta y convincente, que el elector no está apto para ejercer su derecho. Además, cualquier duda sobre si se cumplen o no con los requisitos del proceso de recusaciones tiene que resolverse a favor del ciudadano y de su derecho a ejercer el sufragio.

Por otro lado, la Asamblea Legislativa tiene amplia facultad para regular el proceso electoral. Constitución Estado Libre Asociado, Art. IV, sec. 4. En virtud de ello, hemos reconocido que toda aquella reglamentación que, sin obstaculizar innecesariamente el voto, propenda a la realización de un proceso electoral justo, ordenado, libre de fraude, honesto e íntegro, es válida. *PSP, PPD, PIP v. Romero Barceló,* 110 D.P.R. 248 (1980); *PNP v. Tribunal Electoral*, 104 D.P.R. 741 (1976).

En *PPD v. Admor. Gen. de Elecciones, supra,* pág. 227, nos expresamos sobre el proceso de recusación[1] e indicamos sobre el mismo que constituye "un entredicho contra la validez del voto.   Si bien no lo anula de primera intención, su propósito es precisamente anularlo." Señalamos también, que el elector cuyo voto se impugna debe tener derecho a contradecir la recusación y "a comparecer y ser oído en la vista en que se examine y pueda adjudicarse la procedencia de la recusación.   A ese fin, debe ser citado con suficiente antelación y de manera efectiva.   No debe bastar, a este efecto, un mero diligenciamiento negativo de una citación.   Debe quedar demostrado que se hicieron esfuerzos razonables para notificarle."

## II

La Comisión Estatal de Elecciones, conforme los poderes que le confiere la Ley Electoral, Ley núm. 4 de 20 de diciembre de 1977, según enmendada, 16 L.P.R.A. sec. 3001 *et seq*, aprobó el 28 de noviembre de 2007 el *Reglamento para el trámite de recusaciones* (el Reglamento). El Reglamento se adoptó con el propósito, entre otros, de regular el proceso de recusación de un elector.   Véase,

---

[1] El *Reglamento para el trámite de recusaciones* (el *Reglamento*) aprobado por la Comisión Estatal de Elecciones el 28 de noviembre de 2007, define varios tipos de recusaciones, a saber:   la recusación o exclusión, la recusación de electores inscritos fraudulentamente y la recusación institucional.   Hoy nos concierne la primera de ellas.   La misma se define en el Reglamento bajo los siguientes términos:   "El procedimiento mediante el cual se requiere se elimine la inscripción de un elector del Registro del cuerpo Electoral, o cuya petición de inscripción, transferencia u otra transacción haya sido impugnada durante el proceso de inscripción."

*Comisionado Electoral Partido Nuevo Progresista v.*
*Presidenta Comisión Local de Elecciones del Precinto de*
*Maunabo*, res. 12 de diciembre de 2005, 166 DPR ___, 2007
TSPR ___.

El Título II del Reglamento regula todo lo concerniente al procedimiento de recusación de electores. En tal tenor, el Art. 2.12 contempla el trámite a seguir cuando el ciudadano a ser recusado no pueda ser notificado personalmente del trámite de recusación iniciado en su contra. Es decir, regula la notificación por edictos. La disposición establece lo siguiente:

> Cuando la persona recusada no pudiere ser localizada después de haberse realizado todas las diligencias pertinentes dentro del plazo correspondiente (Diligenciamiento Negativo), el diligenciante (emplazador), certificará mediante Declaración Jurada en el formulario R-002 (Autorización para Emplazar), y bajo apercibimiento de perjurio, todas las gestiones que realizó que resultaron infructuosas para notificar al elector recusado; con una relación del día, la hora y los nombres, apellidos y dirección exacta de las personas entrevistadas.

> El Presidente de la Comisión Local, una vez examine las diligencias de la declaración Jurada conforme a la Regla Núm. 4 de las "Reglas de Procedimiento Civil para el Tribunal General de Justicia", de 1979 según enmendadas determinará si autoriza que la notificación de la recusación se haga por edicto. El edicto se publicará en un periódico de circulación general, una vez dentro del plazo de diez (10) días a partir de la fecha de la autorización. El diligenciante, …. Deberá además, dentro del plazo de los diez (10) días, notificar la "Citación a Vista" por correo certificado con acuse de recibo a la última dirección del elector que surja del Registro General de Electores o de la transacción electoral que corresponda.

> …

> El diligenciante o la persona en quien éste delegue acreditará ante la Junta de Inscripción la publicación del edicto no más tarde de los cinco (5) días siguientes a los diez (10) días para su publicación, mediante los siguientes documentos:
>
> a. Una declaración jurada del administrador o agente autorizado del periódico, acompañada de un (1) ejemplar del edicto publicado, el cual se podrá acreditar vía fax. Pero se presentará el original el día de la vista.
>
> b. Un recibo del Correo del envío que se hizo de la "Citación a Vista" por correo certificado con acuse de recibo, en original, mas
>
> c. Su propia Declaración Jurada bajo apercibimiento de perjurio, según aparece en el formulario de "Citación a Vista (r-003).
>
> Si transcurrido el periodo de cinco (5) días, luego de expirado el plazo de diez (10) días para la publicación del edicto, no se acreditare el hecho de dicha publicación se entenderá desistida la recusación sin perjuicio de que, aduciéndose justa causa, pueda iniciarse una nueva recusación….

Se advierte de lo anterior que el procedimiento de recusación es uno riguroso y detallado. Y así debe ser, pues lo que está en juego es el ejercicio de un derecho constitucional. Ello nos obliga a exigir el cumplimiento riguroso con los requisitos para emplazar mediante edicto a un elector.

De otra parte, se advierte de la antedicha disposición que los términos allí dispuestos no son de carácter jurisdiccional sino más bien de cumplimiento estricto. En *Arriaga v. F.S.E.*, 145 D.P.R. 122, 132 (1998) indicamos que para que exista justa causa, las explicaciones para el incumplimiento tienen que basarse en "explicaciones concretas y particulares, … **que le permitan al tribunal concluir que la tardanza o demora ocurrió razonablemente, por circunstancias especiales.**" Corresponde por lo tanto a

la parte que ha incumplido con el término de cumplimiento estricto, la responsabilidad de demostrar a cabalidad la causa justa para su incumplimiento.

Conforme lo anterior, pasemos a aplicar la doctrina antes expuesta a los hechos ante nuestra consideración.

## III

Conforme se recuenta en la Sentencia que hoy dicta el Tribunal, el Partido Popular Democrático comenzó un procedimiento de recusación por razón de domicilio de varios electores ante la Comisión Local de Elecciones del Precinto 66 de Orocovis. Luego que se acreditara que no se pudieron realizar el diligenciamiento personal se autorizó que dichos electores fueran notificados por edictos.

Conforme el procedimiento establecido, el Presidente de la Comisión Local de Elecciones de Orocovis autorizó la publicación por edicto el 20 de mayo de 2008. El Partido Popular Democrático tenía hasta el 30 de mayo para publicar el referido edicto. **Dos días antes de que venciera el correspondiente término, el PPD solicitó la publicación de los referidos edictos.** El edicto finalmente se publicó el 31 de mayo de 2008 en el periódico El Vocero; es decir, **vencido ya el término provisto en el Reglamento para ello.**

El Partido Popular Democrático alegó que debido a trámites burocráticos internos del partido no se pudo solicitar la publicación al periódico hasta pasado ocho días de que se expidieran los edictos. Esta explicación a mi juicio, es jurídicamente insuficiente para concluir que existió justa causa para el incumplimiento. La burocracia

partidista **nunca puede ser justa causa para privar a un elector de su derecho al voto.** Le corresponde al partido asegurarse que su maquinaria burocrática se mueve con agilidad. Lo que está en juego, después de todo, es precisamente uno de los derechos más preciados en una democracia.

No hay duda que el Partido Popular Democrático dejó para última hora solicitar el edicto correspondiente. Pudiendo acudir a la Comisión Estatal de Elecciones para solicitar una prórroga para extender el término de la notificación no lo hizo. Véase, Art. 6.7 del Reglamento. Con lo cual, debe atenerse a las resultas de una actuación que denota dejadez e informalidad en el trámite de notificación, que a nuestro juicio no se justifica.

Corresponde al diligenciante, en este caso al Partido Popular Democrático, cumplir con los términos de notificación para que se le garantice al elector el debido proceso de ley al privarle de su derecho fundamental. No albergo duda alguna que el Partido Popular Democrático no actuó con la debida diligencia. Nuevamente, los obstáculos burocráticos que existan en una organización político partidista no eximen del cumplimiento riguroso con los requisitos reglamentarios exigibles en casos de esta naturaleza. Tampoco es responsabilidad del periódico asegurarse que los edictos se publiquen dentro del término exigido, ya que dicha responsabilidad es exclusivamente del partido político. Si se acude tarde al periódico para

solicitar una publicación se asume la responsabilidad de que no se pueda publicar a tiempo el edicto.

Para concluir, disentimos de la Sentencia que hoy se dicta y estimamos que actuó correctamente el foro apelativo intermedio.    La inobservancia del procedimiento y requisitos estatuidos para perfeccionar una recusación la hacen inefectiva, en consecuencia procedía desestimar las recusaciones presentadas.


                         Anabelle Rodríguez Rodríguez
                              Juez Asociada